STANLEY COMPANY OF AMERICA, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 15760.  Promulgated June 27, 1949.

*Lawrence A. Baker, Esq.*, for the petitioner.
*William A. Schmitt, Esq.*, for the respondent.

#### OPINION.

BLACK, *Judge*: The Commissioner has determined deficiencies in
income tax against petitioner of $54,656.25 for the year ended Au-
gust 31, 1936, and $36,000 for the year ended August 31, 1937. The
deficiency for 1936 is based on several adjustments made by the Com-
missioner, only one of which is disputed. That adjustment is adjust-
ment (a) and is as follows: "(a) Cancellation of mortgage indebted-
ness, $397,000.00." This adjustment is explained in the deficiency
notice as follows:

(a) The cancellation of the mortgage indebtedness of $600,000.00 on the Ard-
more Theatre, Philadelphia, Pa., by the substitution of a new mortgage in the
amount of $180,000.00 constitutes gross income, within the provisions of Sec-
tion 22 (a) of the Revenue Act of 1936, to the extent of the excess of the debt
cancelled over the debt substituted reduced by the expenses incident to the
transaction. The income realized is $397,500.00  *  *  *.

The deficiency for 1937 is due to several adjustments made by the
Commissioner in the net income reported by petitioner on its return,
only one of which is in dispute. It is as follows: "(f) Profit on mort-
gage bonds, $240,000.00." This adjustment is explained in the defi-
ciency notice as follows:

(f) The acquisition of first mortgage bonds of Stanley-Davis-Clark Corpora-
tion, a wholly owned subsidiary in the principal amount of $2,400,000.00 through
the issue of new first mortgage bonds in the principal amount of $2,160,000.00,

resulted in the realization of income in the amount of $240,000.00 within the provisions of Section 22 (a) of the Revenue Act of 1936.

Petitioner, by appropriate assignments of error, contests the foregoing adjustments for the respective fiscal years.

Respondent in his brief concedes that he erred in adjustment (a) for the fiscal year 1936 and he no longer presses that issue. Effect will be given to this concession in a computation under Rule 50. Respondent continues to insist on the correctness of his adjustment (f) for the fiscal year 1937.

The facts have all been stipulated and we adopt them as our findings of fact. The stipulated facts cover adjustment (a) for the fiscal year 1936 as well as adjustment (f) for the fiscal year 1937. Inasmuch as respondent now concedes that he erred in adjustment (a) for 1936, we do not incorporate in this opinion any of the facts relating to that issue. The facts relating to adjustment (f) for 1937 may be summarized as follows:

Petitioner is a corporation, organized and existing under the laws of the State of Delaware, with its principal office in New York City, and it filed its returns for the fiscal years ended August 31, 1936 and 1937, with the collector of internal revenue for the third district of New York.

By deed dated July 1, 1928 Stanley-Davis-Clark Corporation acquired from the Pittsburgh Opera House Co. a property in Pittsburgh, Pennsylvania, then known as the Grand Theatre property and later as the Warner Theatre. The purchase price was $2,498,700, of which $98,700 was paid in cash, and the balance of $2,400,000 was satisfied by the execution of a purchase money mortgage indenture dated July 1, 1928, to the Fidelity Title & Trust Co., trustee. This indenture provided for an issue of $2,400,000 first mortgage 5 per cent gold bonds, due July 1, 1953.

By letter dated August 10, 1936, addressed to the Fidelity Trust Co. (formerly known as Fidelity Title & Trust Co.), trustee under the aforesaid $2,400,000 purchase money mortgage, petitioner offered to acquire title to the Grand Theatre property and to issue its bonds in the amount of $2,160,000, secured by a first lien on the property, in exchange for the $2,400,000 Stanley-Davis-Clark Corporation bonds and mortgage. This letter stated in part as follows:

Stanley Company of America and Stanley-Davis-Clark Corporation submit the following proposal relative to the $2,400,000 of First Mortgage Five Per Cent. Gold Bonds of Stanley-Davis-Clark Corporation, secured upon property known as the *Warner Theatre, Pittsburgh, Pa.*, and issued under Indenture dated July 1, 1928 in which Fidelity Title and Trust Company is Trustee, all of said bonds being now outstanding:

(1) – Stanley Company of America will acquire title to the said Warner Theatre property and will thereupon duly authorize and create first lien mortgage bonds in the aggregate principal amount of $2,160,000 secured upon

the Warner Theatre property under an Indenture to be executed ·between Stanley Company of America and Fidelity Trust Company, as Trustee, the mortgage property being the identical property now covered by the existing mortgage.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(2) – Stanley Company of America will purchase the said $2,400,000 of Stanley-Davis-Clark Corporation bonds from the respective holders thereof and issue in exchange therefor the above described $2,160,000 of bonds of the Stanley Company of America, subject to adjustment for bond fractions.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(3) – Stanley-Davis-Clark Corporation will, as a term of this proposal, purchase, for cancellation, the coupons which matured July 1, 1936 on the said bonds of that company for cash at $13.50 for each $25.00 coupon, immediately upon deposit of said bonds and coupons with Fidelity Trust Company, Trustee, in acceptance of this proposal. Such July 1, 1936 coupons shall be purchased as aforesaid regardless of whether or not this proposal becomes effective.

(4) – This proposal shall not become effective unless and until it is accepted in writing by the holders of all the said bonds of Stanley-Davis-Clark Corporation and their bonds and coupons deposited with Fidelity Trust Company, Trustee, for the purposes hereof on or before August 22, 1936, subject to the right of the company to extend such date for an additional period not exceeding sixty days.

(5). – The bonds of Stanley Company of America shall be issued and delivered by it to Fidelity Trust Company, Trustee, for delivery to the present bondholders, within sixty days after all the acceptances and bonds and coupons of Stanley-Davis-Clark Corporation have been deposited, pursuant hereto, with the said Trustee. The present Stanley-Davis-Clark Corporation mortgage Indenture shall, upon completion of this transaction, be duly satisfied of record by the Trustee, and all bonds issued thereunder shall be cancelled.

For several years prior to the above the said theatre property had been operated at a loss. At October 15, 1936, all of the bondholders under the Stanley-Davis-Clark Corporation mortgage had accepted the offer of the Stanley Co. of America and had deposited their bonds with the Fidelity Trust Co. On December 9, 1936, the Stanley-Davis-Clark Corporation, wholly owned by the petitioner, merged into and with the petitioner, as evidenced by a certificate of merger dated December 9, 1936, issued by the Department of State of the Commonwealth of Pennsylvania, which reads in essential part as follows:

WHEREAS, under the provisions of Article IX of the Business Corporation Law (Act of May 5, 1933, P. L. 364), the Department of State is authorized and required to issue a

#### CERTIFICATE OF MERGER

evidencing the merger of any one or more domestic business corporations, and any one or more foreign business corporations into one of such foreign corporation under the provisions of that law:

AND WHEREAS, The stipulations and conditions of that law relating to the merger of such business corporations have been fully complied with by the STANLEY COMPANY OF AMERICA, a corporation organized and existing under the laws of the State of Delaware, and the STANLEY-DAVIS-CLARK CORPORATION, a corporation organized and existing under the laws of the State of Pennsylvania.

IT IS THEREFORE CERTIFIED, That from the articles of merger filed with the Department of State, it appears that STANLEY-DAVIS-CLARK CORPORATION, the Pennsylvania corporation, has been merged into the STANLEY COMPANY OF AMERICA, the Delaware corporation.

THEREFORE, KNOW YE, That subject to the Constitution of this Commonwealth, and under authority of the Business Corporation Law, I DO BY THESE PRESENTS, which I have caused to be sealed with the Great Seal of the Commonwealth, hereby declare that upon the date when said merger becomes effective in the State of Delaware, the corporate franchises of the STANLEY-DAVIS-CLARK CORPORATION, the Pennsylvania corporation, shall be extinguished forever, and the Delaware corporation is authorized to continue to do business in this Commonwealth as the surviving corporation under such corporate name.

Petitioner by indenture dated July 1, 1936, gave its bond and mortgage in the amount of $2,160,000, pursuant to which bonds were issued pro rata to the bondholders under the Stanley-Davis-Clark Corporation mortgage.

As required by the offer of August 10, 1936, referred to above, and the acceptance thereof as evidenced by deposit of all bonds by October 15, 1936, the Stanley-Davis-Clark Corporation mortgage was satisfied in full and canceled December 11, 1936.

As of December 9, 1936, the Warner Theatre property had a cost basis of $4,361,569.63, less a reserve of $462,633.23, and this basis was brought into the accounts of petitioner at the same value upon the merger.

Petitioner did not include in taxable net income for the fiscal year ended August 31, 1937, any profit on the above described transaction, but in a schedule supporting item 11 (a) of schedule M of its return it included an item described as "Adjustments of Provision for Losses of Subsidiary Companies $211,210.76." This was composed of two amounts:

1. Credit resulting from exchange of bonds of the company_____ Cr. $240,000.00
2. Provision for deficits of subsidiary companies_____ Dr.    28,789.24

Net credit_____ 211,210.76

Neither the petitioner nor its wholly owned subsidiary, which merged with it on December 9, 1936, was insolvent prior to the merger, nor was the petitioner insolvent subsequent to the date of the merger and exchange of its own bonds for the bonds formerly held by the bondholders under the original mortgage.

We have but one issue in this proceeding and that is, Did petitioner, a solvent corporation which acquired property from its wholly owned subsidiary in a statutory merger under the laws of the State of Delaware, which subsidiary in a prior year placed a first mortgage on the property, realize taxable income when the bondholders under the mortgage and under the circumstances narrated above accepted petitioner's own bonds in a lesser amount in exchange for the old bonds

of the subsidiary held by them? We think this question must be answered in the negative.

Petitioner relies upon the following authorities: *American Seating Co.*, 14 B. T. A. 328; *Fulton Gold Corporation*, 31 B. T. A. 519; *P. J. Hiatt*, 35 B. T. A. 292; *Hotel Astoria, Inc.*, 42 B. T. A. 759; and *Ernst Kern Co.*, 1 T. C. 249. The principle of the foregoing cases is that no taxable income is realized by the purchaser of mortgaged property in cases where he has not assumed and agreed to pay the mortgage indebtedness, but later settles the mortgage indebtedness against the property he has purchased for less than the face amount of the mortgage. These cases hold that in such transactions there is merely an adjustment of the basis of the property. As was said in *Fulton Gold Corporation, supra*:

Here the petitioner, instead of assuming the mortgage, bought the property subject to it, and by making the purchase on such terms incurred no personal liability for the debt. Accordingly, payment of the mortgage did not result in the liquidation of a personal debt. By it the petitioner merely satisfied an encumbrance on property in which it had an equity and there was no release of assets "previously offset by the obligation" of the notes or bonds evidencing the debt secured by the mortgage. *United States* v. *Kirby Lumber Co., supra.*

Petitioner submits that the case of *Ernst Kern Co., supra*, is the nearest in point to the facts in the instant case. We think it is. The facts in the *Ernst Kern Co.* case, in so far as they concerned an issue similar to the one here involved, may be stated briefly as follows: During the taxable year, pursuant to a plan for the readjustment of the obligations of the taxpayer and the Kern Realty Corporation, the taxpayer acquired leasehold estates of the Realty Corporation in business premises occupied by the taxpayer; the defaulted first mortgage leasehold bonds of the Realty Corporation were canceled; the taxpayer issued to the holders of such bonds debentures and shares of its preferred and common stock. Under these facts, we held that there was not a statutory reorganization or a nontaxable transfer within section 112 (b) (5) of the Revenue Act of 1934 and that the taxpayer did not realize a gain of $536,578.06 when it issued its debentures and stock to the holders of the leasehold bonds, since it never assumed any obligation to pay the indebtedness evidenced by the leasehold bonds. In so holding, we said:

Since neither by the terms of the plan of readjustment nor by other facts of record is petitioner shown to have assumed the payment of the leasehold bonds and interest thereon, but it merely agreed to issue to the bondholders a specified amount of its own debentures and stock in lieu of the cancellation of such bonds, we are unable to say that it realized any gain under the principle of the *Kirby* case, *supra*. When the petitioner issued its debentures and stock to the bondholders in the amounts agreed upon it discharged its obligation in full and not for any lesser sum than that obligation. It, therefore, realized no gain. * * *

There is a difference in the facts of the *Ernst Kern Co.* case and the instant case in that in the *Ernst Kern Co.* case there was no statutory reorganization, whereas in the instant case it is clear that, when the Stanley-Davis-Clark Corporation merged into the Stanley Co. of America under the laws of Delaware, there was a statutory reorganization. Petitioner does not argue otherwise. However, it points out that before the merger took place it had been clearly agreed that the bondholders of Stanley-Davis-Clark Corporation would accèpt $2,160,000 first mortgage bonds of Stanley Co. of America for the $2,400,000 outstanding first mortgage bonds of Stanley-Davis-Clark Corporation. Petitioner points out that prior to the merger all of these bonds had been deposited under the agreement with Fidelity Trust Co. of Pittsburgh, Pennsylvania. Therefore, petitioner argues, correctly, we think, that, when the merger was completed December 9, 1936, and petitioner took over the mortgaged property in question, it did not assume and agree to pay the $2,400,000 outstanding bonds against the property, but only agreed to pay $2,160,000 of such indebtedness. Therefore, to paraphrase what we said in the *Ernst Kern Co.* case, *supra*:

When the petitioner issued its bonds for $2,160,000 to the bondholders of Stanley-Davis-Clark Corporation in the amounts agreed upon it discharged its obligation in full and not for any lesser sum than that obligation.

Petitioner's future basis for gain or loss and for depreciation on the theatre property thus acquired will, of course, be correspondingly reduced from what it would have been if petitioner had assumed and agreed to pay the full amount of the Stanley-Davis-Clark Corporation bonds of $2,400,000. *Fulton Gold Corporation, supra.* It would be true, of course, that, if petitioner had merged with Stanley-Davis-Clark Corporation without having made the agreement beforehand with the bondholders of Stanley-Davis-Clark Corporation to exchange $2,160,000 of its own first mortgage bonds for the $2,400,000 of Stanley-Davis-Clark bonds which they held, it would have become personally liable for the entire mortgage debt of $2,400,000. See section 2092 Revised Code of Delaware, which so provides. If petitioner had thereafter negotiated a settlement with the Stanley-Davis-Clark bondholders to exchange $2,160,000 of its own first mortgage bonds for the $2,400,000 Stanley-Davis-Clark bonds, petitioner would doubtless have realized a gain of $240,000, as the Commissioner has determined, under the doctrine of *Helvering* v. *American Chicle Co.*, 291 U. S. 426. But petitioner did not carry out the transaction in that manner. What it did do, as we have already pointed out, was to definitely agree with the Stanley-Davis-Clark bondholders *prior* to the merger that it should never become liable for any greater sum than $2,160,000 on the mortgage indebtedness. That being true, it realized no gain on the trans-

action any more than did the Ernest Kern Co. in that case, which we have already discussed above.

What we have said above is not in conflict with *Houston Natural Gas Co.*, 9 T. C. 570; affd. (CA–5), 173 Fed. (2d) 46. In the *Houston Natural Gas Co.* case the parent, having acquired some bonds of its subsidiary at $310,000 less than par, liquidated and dissolved the subsidiary, and in so doing acquired all the subsidiary's assets. To liquidate, however, the subsidiary had to pay off all its obligations, and, as a consequence, we held that by receipt of the assets the parent received payment of the par value of the bonds held by it and thus realized a gain of $310,000 above cost of the bonds. The taxpayer argued that no gain or loss was recognizable under section 113 (b) (6) on the complete liquidation of a subsidiary, but that section was held to apply only to the distribution of assets remaining after discharge of liabilities and not to apply to the parent's receipt of property *qua* bondholder, as distinguished from the remaining property which it received *qua* stockholder.

The merger of a subsidiary with its parent under the facts stipulated in the instant case presents no corresponding situation. The one here involved was authorized and carried out under section 2091 of the Code of Delaware, which expressly permits a foreign subsidiary to merge with a domestic corporation. By virtue of the merger the subsidiary "shall cease" to exist and all its properties "shall be vested in" the surviving corporation. But such vesting has nothing of the character of a distribution in liquidation, for "all debts, liabilities and duties of the respective constituent corporations shall thenceforth attach to said resulting or surviving corporation, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it." Sec. 2092, Code of Delaware. Thus, no discharge of liabilities was contemplated or required by the act of merger, and, as petitioner did not own any bonds of Stanley-Davis-Clark, there is an additional reason why the principle of *Houston Natural Gas Co., supra,* has no application, for the parent had no creditor's claim which receipt of the subsidiary's assets could discharge. While the Delaware statute provides that liabilities shall attach to the surviving corporation, that general provision is supplemented by section 2096, which reads, in pertinent part, as follows:

Powers of Corporation Resulting From or Surviving Consolidation or Merger: When two or more corporations are consolidated or merged, the corporation resulting from or surviving such consolidation or merger shall have power and authority to issue bonds or other obligations, negotiable or otherwise, * * * to an amount sufficient with its capital stock to provide for all the payments it will be required to make, or obligations it will be required to assume, in order to effect such consolidation or merger; * * *

Upon the effecting of the merger in the instant case Stanley-Davis-Clark ceased to exist and petitioner was the surviving corporation. As we have already pointed out, petitioner acquired the assets of Stanley-Davis-Clark in the merger under an agreement which *excluded* assumption of liability on the Stanley-Davis-Clark bonds, but required the issuance of its own bonds. Petitioner's bond issue of $2,160,000 was effected in accordance with the Delaware statute quoted above, and in doing so it had neither gain nor loss.

The authorities cited and relied upon by the Commissioner are *United States* v. *Kirby Lumber Co.*, 284 U. S. 1; *Helvering* v. *American Chicle Co.*, *supra; Commissioner* v. *Coastwise Transp. Corporation*, 71 Fed. (2d) 104; and *L. D. Coddon & Bros., Inc.*, 37 B. T. A. 393. All of the foregoing cases were cases where the bonds or notes purchased were either the obligations of the corporations purchasing them or were bonds or notes which the purchasing corporation had definitely assumed and agreed to pay. In other words, the bonds or notes represented indebtedness which the purchaser was personally obligated to pay. See also *Commissioner* v. *Jacobson*, 336 U. S. 28. In the *Jacobson* case the Supreme Court pointed out that "at the time of their purchase the respondent [Jacobson] was unconditionally and primarily bound to pay their face amounts on May 1, 1942, with interest."

We have no such situation here. Petitioner was at no time obligated to pay the face amount of the Stanley-Davis-Clark Corporation bonds of $2,400,000. In the transaction it only obligated itself to pay in exchange $2,160,000 of bonds. That much it did pay by the exchange in question and in doing so it realized no gain. *Ernst Kern Co.. supra.* This issue is decided for petitioner.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

MURDOCK, HILL, DISNEY, HARLAN, and LeMIRE, *JJ.*, dissent.